(Rev. 10/19/2011) GPS Search Warrant

FILED IN CHAMBERS
U.S.D.C. – Rome

OCT - 1 2019

JAMES N. HATTEN, Clerk
By: /s/

# United States District Court

Northern District of Georgia

In the Matter of the Search of:
THE VERIZON WIRELESS CELLULAR TELEPHONE
ASSIGNED TELEPHONE NUMBER
770-843-2312

APPLICATION FOR WARRANT
FOR GEO-LOCATION DATA
CASE NUMBER: 4:19-mc-55
UNDER SEAL

I, Samuel J. Lee, being duly sworn, depose and says:

I am a(n) Task Force Officer of the DEA, and have reason to believe that the

> THE VERIZON WIRELESS CELLULAR TELEPHONE ASSIGNED TELEPHONE NUMBER 770-843-2312, NEMESIO MARTINEZ AT 5191 WILLIAMS, NORCROSS, GA 30093 AND BELIEVED TO BE USED BY LUIS PEREZ;

contains geo-location data related to an ongoing investigation to locate Luis PEREZ, a person to be arrested, in the Northern District of Georgia;

and that information as to the location of the Subject Telephone will be obtained by use of the geo-location function that is factory-installed in the telephone, that such information will lead to evidence concerning the location of PEREZ, a person to be arrested, thus establishing grounds for the issuance of this warrant.

The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof.   ☒Yes ☐No

_____
Signature of Affiant
Samuel J. Lee

Sworn to before me, and subscribed in my presence

October 1, 2019    9:39 am                at    Rome, Georgia
Date                                            City and State

Walter E. Johnson
United States Magistrate Judge                  _____
Name and Title of Judicial Officer              Signature of Judicial Officer

AUSA John T. DeGenova /404-581- 6201

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Samuel J. Lee, a Task Force Officer with the Drug Enforcement Administration, Atlanta, Georgia, being duly sworn, hereby state that the following is true and correct to the best of my knowledge and belief:

## INTRODUCTION AND THE SUBJECT TELEPHONE

1. I am a Special Agent of the United States Drug Enforcement Administration ("DEA") assigned to the Atlanta Field Division ("AFD").  As such, I am an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I submit this Affidavit in connection with the application for Order directing Verizon Wireless to assist agents of the DEA by providing all information, facilities, and technical assistance needed to ascertain the physical / geographic location data – including, without limitation, data indicating the specific latitude and longitude, Global Position System ("GPS") information, geographic location data, Enhanced 911, or other precise location information (collectively "geo-location information") – for the following cellular telephone:

>**Subject Telephone**:  A Verizon Wireless cellular telephone number 770-843-2312, subscribed in the name of Nemesio Martinez at 5191 Williams Norcross GA 30093, and believed to be used by Luis PEREZ.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that the geo-location information for the **Subject Telephone** will assist law enforcement in arresting PEREZ, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

4. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## AFFIANT BACKGROUND

5. I am employed as a Task Force Officer with the DEA and have been assigned since October 2018. I am currently assigned to the DEA's Atlanta Field Division, Enforcement Group 1. I am currently employed with the Cartersville Police Department and have been so employed since July 2013. While employed with the Cartersville Police Department, I was first assigned to the Patrol Division and then transferred to the Bartow-Cartersville Drug Task Force where I spent approximately three years assigned to the FBI Safe Streets Task Force (a drug and gang task force) as a Drug Investigator.

6. While serving as a Drug Investigator, I have received numerous hours of training involving the distribution of illegal narcotics. This training addressed the methods by which drug traffickers possess and distribute controlled substances; the manner and means in which they conceal and launder the proceeds from the distribution of controlled substances; the manner and means

2

in which they protect their proceeds and their controlled substances; and the manner and means by which drug traffickers attempt to avoid law enforcement detection of their activities. The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, and methamphetamine.

7. During my law enforcement career, I have written and/or executed numerous search and seizure warrants pertaining to the seizure of all types of criminal evidence, such as illegal drugs, drug paraphernalia, drug records, drug proceeds and evidence of other types of crimes and arrest warrants pertaining to the arrests of individuals involved in drug trafficking activities. I have participated in numerous drug investigations and have deployed various investigative techniques during those investigations. I have become familiar with the patterns of activity of drug traffickers; the types and amounts of profits made by drug dealers; and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

8. Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have conducted with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business. My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate their drug trafficking activity; and their use of numerical codes and code words to conduct drug transactions. I am familiar with the ways that drug traffickers

conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds; the use of third parties to purchase or hold title to assets; and the use of stash houses to store large quantities of drug proceeds.

9. In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career has been further informed by other law enforcement agents with experience conducting drug investigations.

10. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 1952, 1956, and 1957. I have received training, both formal and informal, in the enforcement of the drug laws, investigation of drug trafficking and money laundering organizations, drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

11. I am familiar with and have used many of the traditional methods of investigation, including, without limitation, visual surveillance, electronic surveillance, informant and witness interviews, consensually recorded telephone conversations, wiretap investigations, defendant debriefings, the use of confidential sources, undercover operations, execution of search warrants, the seizure of drug evidence, and controlled purchases of drugs, among others.

4

12. I have participated in numerous drug investigations, in which traditional methods of investigation were used that have resulted in the arrests of individuals who manufactured, smuggled, received, and distributed controlled substances, and where illegal narcotics and narcotics proceeds were seized. In connection with those and other narcotics cases, I have conducted follow-up investigations relating to the laundering and concealment of assets, analysis of bank and other financial records, and identification of conspirators through ledgers, telephone bills, records, and photographs.

13. I have been involved in the debriefing of defendants, witnesses, and informants, as well as others, with knowledge of the importation, distribution, and transportation of controlled substances and of the laundering and concealing of proceeds derived from drug trafficking. I have written and/or executed search, seizure, and arrest warrants pertaining to the seizure of all types of criminal evidence, including illegal drugs, drug paraphernalia, drug proceeds, drug records, and evidence of other types of crimes. I personally have participated in Title III investigations, including wiretap investigations involving drug trafficking organizations.

14. Based upon training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug trafficker's import and distribute drugs; use cellular telephones to facilitate drug activity; and use numerical codes and coded language to conduct their transactions. In my experience, drug traffickers often obtain cellular telephones in fictitious names and/or the names of third parties

5

in an effort to conceal their drug trafficking activities from law enforcement. I also am familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds, the use of electronic wires, and the use of off-shore accounts to launder and conceal assets.

15. I further have been involved for more than four years in the exploitation, analysis, and evaluation of the particular information, which is almost exclusively associated with the use of cellular telephone devices. This particular information includes but is not limited to;

   a. the use of cell site data, GPS pings and telephone company records to identify the location where cellular telephones are being used;

   b. the telephone companies utilization of I.M.E.I. "International Mobile Electronic Identifier," and ESN "Electronic Serial Numbers" to identify a particular telephone device within the cellular companies system to a particular telephone number with a particular cellular device;

   c. analysis of telephone records to identify potential co-conspirators in investigations where cellular telephones are being used; and

    d. the use of cell site simulator type equipment to identify cellular devices used by targets subjects.

16. In my training and experience, I know that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service such as Verizon Wireless have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service. Based on my training and experience, I know that Verizon collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## SOURCES OF INFORMATION

17. I make this Affidavit based upon personal knowledge derived from my participation in this investigation and information I have learned from (including, but not limited to) the following sources:

    a. discussions with DEA Special Agents and investigators;

    b. the review of written reports of investigations, arrests, seizures, and physical surveillance conducted by state and local officers and federal agents;

7

    c. the review of telephone toll records;

    d. the review of reports of debriefings of sources of information and other witnesses;

    e. undercover operations;

    f. calls and electronic communications – obtained through consensual recordings, interception, and/or search warrants;

    g. geo-location data for cellular telephones; and

    h. public records and commercial database searches.

18. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) with whom I have spoken or whose report I have reviewed.  Such statements are stated in sum and substance, unless otherwise indicated.  Wherever in this Affidavit I state a belief, such belief is based upon my background, training, and experience and the information obtained through this investigation to date, information from the undercover operations, and the content and context of the communications.

19. The facts relayed in this affidavit do not reflect the totality of information known to me or other agents and officers, and merely the facts necessary to establish probable cause.  I do not rely upon facts not set forth herein in reaching my conclusion that a warrant should be issued, nor do I

request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a warrant

## PROBABLE CAUSE

20. Since approximately March 2018, DEA Atlanta has been investigating a drug trafficking ring operating in Rome and Atlanta, Georgia, and elsewhere. Members of the organization have included Juan Cain VALENCIA-Ramirez, Luis Antonio PEREZ, Javier RIVERA, Ricky MCPHERSON, and others for drug trafficking and money laundering in the area of Atlanta and Rome, Georgia, and Houston, Texas. As discussed below, agents believe that PEREZ, the user of the **Subject Telephone**, was a drug courier for VALENCIA-Ramirez, the leader of this distribution network.

21. In October 2018, agents executed a federal search warrant at 223 Ellis Road, Rome, Georgia. There, agents found a large quantity of methamphetamine buried on the property. In the house, agents found two cellular telephones that appeared to have been used by or belonged to PEREZ. When agents searched the phones pursuant to a federal search warrant, agents identified PEREZ's Facebook account, "atlvatoz.luis," (Facebook ID 100002397117392). Agents recognized an accompanying Facebook profile picture of the telephone user as Luis PEREZ.

22. On April 23, 2019, the grand jury in the Northern District of Georgia charged VALENCIA and PEREZ in a sealed indictment with a conspiracy to distribute methamphetamine, distribution of methamphetamine, and attempted

9

distribution of methamphetamine. Arrest warrants were issued for VALENCIA-Ramirez and PEREZ on April 24, 2019, and PEREZ is currently a fugitive.

23. On July 24, 2019, a search warrant was authorized by Magistrate Judge Walter E. Johnson for information associated with PEREZ's Facebook account: "atlvatoz.luis" and Facebook ID 100002397117392.

24. On August 7, 2019, Facebook provided agents with records concerning the account. For instances that the account was "logged in to" or accessed, Facebook provided dates, times, and Internet Protocol (IP) addresses associated with the logins. Using these IP addresses provided, agents were able to identify Internet Service Providers (ISPs) that provided the internet access to log-in to PEREZ's account. Agents determined that someone had logged onto PEREZ's Facebook account through the ISP Verizon Wireless on June 29, 2019 at 19:24 hours UTC; June 30, 2019 at 12:43 hours UTC; and July 3, 2019 at 12:32 hours UTC.

*Identification of Subject Telephone*

25. Agents obtained Verizon records to identify the Verizon account associated with the IP addresses used to log-in to PEREZ's account. The Verizon subscriber for the account for all three of the above-referenced log-ins was listed as Nemesio Martinez at 5191 Williams in Norcross, GA 30093. A telephone number attached to the account was 770-843-2312 (**Subject Telephone**). The **Subject Telephone** has been active since June 26, 2019.

26. From the investigation, agents know that the address associated with the **Subject Telephone** (5191 Williams Road) is the same address listed on PEREZ' GA Driver's License.

27. Further, on April 18, 2018, PEREZ used telephone number 470-303-7588 to speak with a DEA Undercover Agent to finalize the details of a purchase of one kilogram of methamphetamine. Telephone records for that 7588 number showed that the subscriber was listed as Luis Perez at 5191 Williams Rd, Norcross, GA 30093. The 7588 number was active from March 20, 2018 until April 20, 2018.

28. Further, toll records show that the **Subject Telephone** is in contact with other telephone numbers previously identified in this investigation.

29. Based upon my training and experience I know that drug traffickers will frequently possess multiple telephones. For example, during the course of the, agents determined VALENCIA used approximately nine different telephone numbers over a seven-month period. However, while drug traffickers may frequently change their telephone numbers, they will contact the same individuals.

30. Based on this information set forth in this affidavit, and my training and experience, I believe that PEREZ has used and is currently using the **Subject Telephone**.

31. Determining the location of the **Subject Telephone** will assist agents in further identifying PEREZ's location or locations that he has frequented, which will lead to information that will lead to his arrest.

11

## GPS DATA AND ANYTIME MONITORING

32. I understand that the **Subject Telephone** is equipped with technology that emits geo-location data to be collected by Verizon Wireless. The geo-location mobile tracking equipment was factory-installed within the **Subject Telephone** and upon belief has remained in the **Subject Telephone** up to the date of this affidavit. The equipment provides a link between the **Subject Telephone** and Verizon Wireless, where the mobile tracking equipment generates a signal that fixes the telephone's geographic position. The signal is then read by a cell phone tower that transmits the location information in a form that Verizon Wireless computer systems are able to calculate and project upon a map.

33. I further understand that Verizon Wireless can provide location-finding information 24 hours a day. Based on my training and experience, I know that drug traffickers frequently operate at different hours of the day and often transport and/or deliver drug loads during the evening and early morning hours. Further, I know that individuals often keep cellular phones near them at all hours, including during the night. As a result, I further request that the geo-location warrant authorize the monitoring of transmissions from the geo-location system any time in the day or night.

34. I request the Court to direct Verizon Wireless to assist DEA agents in the monitoring of transmissions from the geo-location mobile tracking device installed in the **Subject Telephone** and grant DEA agents the authority to monitor geo-location data transmissions via the Verizon Wireless systems to

extend to any time of the day or night as required, including monitoring of geo-location data transmissions (a) from inside private residence or garages and other locations not open to the public or visual surveillance; and (b) in the event that either the **Subject Telephone** leave the Northern District of Georgia, but remain within the United States. I further request that the Court direct Verizon Wireless to provide said agents immediately on request with all information needed to ascertain the physical locations of the **Subject Telephone**. I also request that the Court direct that Verizon Wireless provide an engineering map showing cell site tower locations, sectors, and orientations.

## CONCLUSION

35. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703, it is requested that the Court issue a warrant and Order authorizing the acquisition of the requested information and directing Verizon Wireless, the service provider for the **Subject Telephone** to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of the **Subject Telephone** specifically through the use of a factory-installed geo-location function within the **Subject Telephone** and for a period of forty-five (45) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

36. IT IS FURTHER REQUESTED that the Court authorize Verizon Wireless to disclose to the DEA, transmissions from the **Subject Telephone's**

geo-location function: (1) when the **Subject Telephone** is inside private residences, garages, and other areas not open to the public or visual surveillance; and (2) when the **Subject Telephone** leaves the Northern District of Georgia (so long as the **Subject Telephone** remains in the United States).

## SEALING REQUEST

37. IT IS FURTHER REQUESTED that the search warrant, supporting application, affidavit, and associated pleadings be filed UNDER SEAL until further order of the Court to avoid premature disclosure of the ongoing undercover investigation, guard against flight, avoid the destruction of evidence, avoid the intimidation of witnesses, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the Court's Orders.

## END OF AFFIDAVIT